Citation Nr: 1542442 
Decision Date: 09/30/15 Archive Date: 10/05/15

DOCKET NO. 11-11 266 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Nashville, Tennessee


THE ISSUES

1. Entitlement to a rating in excess of 20 percent prior to October 22, 2013, and a rating in excess of 60 percent beginning October 22, 2013, for the Veteran's service-connected lumbosacral strain.

2. Entitlement to a rating in excess of 10 percent for right lower extremity neuropathy prior to February 10, 2012.

3. Entitlement to a rating in excess of 10 percent for left lower extremity neuropathy prior to February 10, 2012.

3. Entitlement to a total disability rating based on individual unemployability (TDIU) prior to June 8, 2011.


REPRESENTATION

Veteran is represented by: Allen Gumpenberger, Agent

ATTORNEY FOR THE BOARD

C. Banister, Associate Counsel


INTRODUCTION

The Veteran served on active duty from September 1971 to June 1977. These matters come before the Board of Veterans' Appeals (Board) on appeal from a January 2010 rating decision by the Department of Veterans Affairs (VA) Regional Office (RO) in Nashville, Tennessee.

In June 2009, the Veteran submitted a claim of entitlement to TDIU, which was denied in an August 2009 rating decision. The Veteran submitted another claim of entitlement to TDIU in September 2009, which was denied in a January 2010 rating decision. Although the Veteran did not appeal the denial of his TDIU claim, a claim of entitlement to TDIU is part and parcel of an increased rating claim when such claim is raised by the record or the veteran. See Rice v. Shinseki, 22 Vet. App. 447 (2009). An August 2010 VA psychiatric treatment record shows that the Veteran reported looking for work, but stated that he was unable to find a job due to his physical limitations. Accordingly, a claim of entitlement to TDIU has been raised by the record, and therefore, has been added to the title page. See Rice v. Shinseki, 22 Vet. App. 447 (2009). Beginning June 8, 2011, the Veteran's combined schedular rating was 100 percent, and he was in receipt of a special monthly compensation based on a single disability rated as 100 percent disabling and an additional disability rated as 60 percent disabling. See 38 C.F.R. § 3.350(i) (2015). Thus, the issue of entitlement to TDIU on or after June 8, 2011 is moot. See Bradley v. Peake, 22 Vet. App. 280, 293 (2008). 


FINDINGS OF FACT

1. Prior to October 22, 2013, the Veteran's service-connected lumbosacral strain was manifested by forward flexion to 40 degrees, with objective evidence of pain throughout, and increased pain, fatigue, weakness, muscle spasms, and additional functional loss during flare-ups, all of which prevented prolonged sitting, standing, and walking.

2. Beginning October 22, 2013, the Veteran's service-connected lumbosacral strain was manifested by incapacitating episodes having a total duration of at least six weeks during the past 12 months without any evidence of ankylosis.

3. Prior to February 10, 2012, the Veteran's service-connected right lower extremity neuropathy was manifested by mild incomplete paralysis of the sciatic nerve.

4. Prior to February 10, 2012, the Veteran's service-connected left lower extremity neuropathy was manifested by moderate incomplete paralysis of the sciatic nerve.

5. Prior to June 8, 2011, the evidence of record demonstrates that the Veteran was unable to secure or follow substantially gainful employment as a result of his service-connected disabilities.


CONCLUSIONS OF LAW

1. Prior to October 22, 2013, the criteria for a rating of 40 percent for a lumbosacral strain have been met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. § 4.71a, Diagnostic Code 5237 (2015).

2. Beginning October 22, 2013, the criteria for a rating in excess of 60 percent for a lumbosacral strain have not been met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. § 4.71a, Diagnostic Code 5243 (2015).

3. Prior to February 10, 2012, the criteria for a rating in excess of 10 percent for right lower extremity neuropathy have not been met. 38 U.S.C.A. §§ 1155, 5107; 38 C.F.R. § 4.124a, Diagnostic Code 8520 (2015).

3. Prior to February 10, 2012, the criteria for a 20 percent disability rating for left lower extremity neuropathy have been met. 38 U.S.C.A. §§ 1155; 38 C.F.R. § 4.124a, Diagnostic Code 8520.

4. Prior to June 8, 2011, the criteria for entitlement to TDIU have been met. 38 U.S.C.A. § 1155, 5107 (West 2014); 38 C.F.R. §§ 3.340, 3.341, 4.16, 4.19 (2015).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

VA has a duty to notify and assist veterans in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2015). 

The RO's August 2009 letter to the Veteran contained the requisite notice. See Vazquez-Flores v. Shinseki, 580 F.3d 1270, 1275-82 (2009). Further, the purpose behind the notice requirement has been satisfied because the Veteran has been afforded a meaningful opportunity to participate effectively in the processing of his claim, including the opportunity to present pertinent evidence. See Pelegrini v. Principi, 18 Vet. App. 112, 120 (2004).

The duty to assist has also been satisfied, as the RO obtained the Veteran's VA treatment records. See 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159. There is no indication in the record that additional evidence relevant to the above-captioned claims is available and not part of the record. See Pelegrini, 18 Vet. App. at 116. 

The Veteran was initially provided a VA examination in September 2009. After the Veteran asserted that his low back disability worsened, he received additional VA examinations in October 2013 and June 2014. The examiners administered thorough clinical evaluations which provided findings pertinent to the rating criteria and allowed for fully informed evaluations of the disabilities at issue. See Barr v. Nicholson, 21 Vet. App. 303, 311 (2007). Accordingly, the Board finds that the Veteran has received an adequate VA examination for evaluation purposes. See Barr, 21 Vet. App. at 311.

As there is no indication that any failure on the part of VA to provide additional notice or assistance reasonably affects the outcome of this claim, the Board finds that any such failure is harmless. See Mayfield v. Nicholson, 20 Vet. App. 537, 542-43 (2006); see also Shinseki v. Sanders, 129 S. Ct. 1696 (2009) (reversing prior case law imposing a presumption of prejudice on any notice deficiency and clarifying that the burden of showing that an error is harmful or prejudicial normally falls upon the party attacking the agency's determination).

In August 2009, the Veteran submitted a claim of entitlement to a rating in excess of 10 percent for his service-connected lumbosacral strain. In a January 2010 rating decision, the RO increased the Veteran's disability rating to 20 percent, effective August 18, 2009. Thereafter, the Veteran perfected an appeal. In May 2014, the Board remanded the claim for a new VA examination. Specifically, the Board directed the examiner to clarify whether the Veteran had spinal ankylosis and whether any incapacitating episodes required treatment by a physician and prescribed bed rest, as required by the Formula for Rating Intervertebral Disc Syndrome (IVDS) Based on Incapacitating Episodes. See 38 C.F.R. § 4.71a. While in remand status, the Veteran underwent a VA examination of the thoracolumbar spine in June 2014. Although the examiner did not specify whether the Veteran's incapacitating episodes required treatment by a physician and prescribed bed rest, the record shows that in a May 2015 rating decision, the RO granted the maximum disability rating available under the Formula for Rating IVDS Based on Incapacitating Episodes. See 38 C.F.R. § 4.71a. As the Board will not disturb the already-assigned 60 percent disability rating based on incapacitating episodes, any error committed with respect to this remand directive is harmless. See Stegall v. West, 11 Vet. App. 268, 271 (1998) (holding that the rule of prejudicial error applies when determining whether there has been compliance with the Board's remand directives). Accordingly, the Board finds that the RO substantially complied with the May 2014 remand directives See Id.

Disability ratings are determined by applying the criteria set forth in the VA Schedule for Rating Disabilities (Rating Schedule). 38 C.F.R. Part 4 (2015). The Rating Schedule is primarily a guide in the evaluation of disability resulting from all types of diseases and injuries encountered as a result of or incident to military service. The ratings are intended to compensate, as far as can practicably be determined, the average impairment of earning capacity resulting from such diseases and injuries and their residual conditions in civilian occupations. 38 U.S.C.A. § 1155; 38 C.F.R. § 4.1 (2015). In resolving this factual issue, the Board may only consider the specific factors as are enumerated in the applicable rating criteria. See Massey v. Brown, 7 Vet. App. 204, 208 (1994); Pernorio v. Derwinski, 2 Vet. App. 625, 628 (1992). Additionally, staged ratings are appropriate when the factual findings show distinct time periods during which a disability exhibits symptoms that warrant different ratings. Hart v. Mansfield, 21 Vet. App. 505 (2007).

Disabilities of the spine are evaluated under the criteria set forth in the General Rating Formula for Diseases and Injuries of the Spine (General Rating Formula) or under the Formula for Rating IVDS Based on Incapacitating Episodes, whichever results in the higher evaluation. See 38 C.F.R. § 4.71a.

Pursuant to the General Rating Formula, a 20 percent disability rating is warranted where forward flexion of the thoracolumbar spine is greater than 30 degrees, but not greater than 60 degrees; or where the combined range of motion of the thoracolumbar spine is not greater than 120 degrees; or where there is muscle spasm or guarding severe enough to result in an abnormal gait or abnormal spinal contour such as scoliosis, reversed lordosis, or abnormal kyphosis. 38 C.F.R. § 4.71a, General Rating Formula. A 40 percent disability rating is warranted where forward flexion of the thoracolumbar spine is limited to 30 degrees or less; or where there is favorable ankylosis of the entire thoracolumbar spine. Id. A 50 percent evaluation is warranted where there is unfavorable ankylosis of the entire thoracolumbar spine. Id. A 100 percent evaluation is warranted where there is unfavorable ankylosis of the entire spine. Id.

For VA compensation purposes, normal forward flexion of the thoracolumbar spine is 0 to 90 degrees, extension is 0 to 30 degrees, left and right lateral flexion are 0 to 30 degrees, and left and right lateral rotation are 0 to 30 degrees. The combined range of motion refers to the sum of the range of forward flexion, extension, left and right lateral flexion, and left and right rotation. The normal combined range of motion of the thoracolumbar spine is 240 degrees. 38 C.F.R. § 4.71a, General Rating Formula, Note (2); see also 38 C.F.R. § 4.71a, Plate V (2015). 

For VA compensation purposes, unfavorable ankylosis is a condition in which the entire cervical spine, the entire thoracolumbar spine, or the entire spine is fixed in flexion or extension, and the ankylosis results in one or more of the following: difficulty walking because of a limited line of vision; restricted opening of the mouth and chewing; breathing limited to diaphragmatic respiration; gastrointestinal symptoms due to pressure of the costal margin on the abdomen; dyspnea or dysphagia; atlantoaxial or cervical subluxation or dislocation; or neurologic symptoms due to nerve root stretching. Fixation of a spinal segment in neutral position (zero degrees) always represents favorable ankylosis. 38 C.F.R. § 4.71a, General Rating Formula, Note (5). 

Additionally, any associated objective neurologic abnormalities, including, but not limited to, bowel or bladder impairment, should be separately evaluated under an appropriate diagnostic code. 38 C.F.R. § 4.71a, General Rating Formula, Note (1).

Pursuant to the Formula for Rating IVDS Based on Incapacitating Episodes, a 10 percent disability rating is warranted when there are incapacitating episodes having a total duration of at least one week, but less than two weeks, during the past 12 months. 38 C.F.R. § 4.71a, Diagnostic Code 5243. A 20 percent rating is warranted when there are incapacitating episodes having a total duration of at least two weeks, but less than four weeks, during the past 12 months. Id. A 40 percent rating is warranted when there are incapacitating episodes having a total duration of at least four weeks, but less than six weeks, during the past 12 months. Id. A 60 percent rating is warranted when there are incapacitating episodes having a total duration of at least six weeks during the past 12 months. Id. An incapacitating episode is defined as a period of acute signs and symptoms due to IVDS that requires bed rest prescribed by a physician and treatment by a physician. 38 C.F.R. § 4.71a, Diagnostic Code 5243, Note (1).

A July 2009 private treatment record shows that the Veteran reported an acute onset of left buttock pain radiating down the left lower extremity after reaching for a shirt in his closet. He denied any loss of bowel or bladder control. The treatment prover indicated that the Veteran had a positive sitting root test on the left side, which produced the discomfort. It was also noted that a recent electromyography/nerve conduction velocity (EMG/NCV) study revealed left femoral mononeuropathy on top of a moderate sensory mononeuropathy/peripheral neuropathy. The diagnoses anterior quadricep atrophy, secondary to the previously-noted EMG/NCV findings, and an acute sciatic episode. 

An August 2009 VA treatment record indicates that the Veteran reported increased lower back pain with pain shooting into the left lower extremity and decreased left lower extremity range of motion, strength, and sensation. 

An August 2009 VA treatment records show that the Veteran reported increased back pain with shooting pain, weakness, decreased range of motion, and numbness in the left lower extremity. He also reported bladder incontinence It was noted that the Veteran was using a rolling walker at home due to internal rotation of the left lower extremity and foot drop. The diagnoses included low back pain, left lower extremity radiculopathy, sciatic, and diabetic mononeuropathy. 

An August 2009 private treatment record shows that the Veteran reported continuing pain radiating down the left lower extremity and urination "dribble," but denied any true bladder or bowel dysfunction.

During a September 2009 VA examination, the Veteran reported progressively worsening constant lower back pain radiating down both legs, which he described as a moderate shooting, stabbing, burning, aching pain. He reported weekly flare-ups lasting approximately one or two days in duration, during which he experienced increased pain. The examiner indicated that the Veteran experienced approximately 60 days of incapacitating episodes during the past 12 months, during which the Veteran was unable to walk more than a few yards and had to use a wheelchair. He stated that the only alleviating factors during flare-ups were rest, heat, and time. He also reported symptoms of fatigue, weakness, muscle spasms, decreased motion, and urinary frequency/nocturia. He denied any urinary incontinence, urgency, or retention requiring catheterization. He also denied any fecal incontinence, numbness, paresthesias, and leg or foot weakness. A physical examination revealed no evidence of gibbus, kyphosis, lumbar flattening, lumbar lordosis, scoliosis, reverse lordosis, spinal ankylosis, atrophy, guarding, or weakness. There examiner noted objective evidence of thoracic spasms, tenderness, and pain with motion. The examiner also indicated that there was no evidence of muscle spasm, localized tenderness, or guarding severe enough to be responsible for abnormal gait or abnormal spinal contour. A neurological examination revealed diminished sensation to proprioception, pain, vibration, and monofilament testing of the feet in typical stocking distribution, bilaterally. A Lasegue's sign was positive on the right side. Range of motion testing revealed forward flexion to 40 degrees, extension to 5 degrees, left lateral flexion to 10 degrees, left lateral rotation to 10 degrees, right lateral flexion to 10 degrees, and right lateral rotation to 10 degrees, with objective evidence of pain throughout active range of motion. There was no additional limitation in range of motion after three repetitions. The diagnoses were degenerative disc disease and degenerative joint disease of the lumbar spine. It was noted that the Veteran was unemployed due to his physical disabilities. The examiner also indicated that the Veteran's low back disability prevented him from playing sports; severely affected exercise and chores; moderately affected shopping, recreation, traveling, bathing, and dressing; mildly affected toileting; and did not affect feeding and grooming.

An October 2009 VA neurosurgery consultation record indicates that the Veteran reported worsening lower back pain, which radiated down the left hip and leg. A physical examination revealed left foot drop and decreased pedal pulse in the entire distal left lower extremity. The impression was degenerative disc disease at L5-S1.

A November 2009 VA treatment record indicates that the Veteran reported low back pain with left lower extremity pain, numbness, and tingling, which the Veteran characterized as an eight out of ten in severity. The assessment was lumbar IVDS and lumbosacral radiculitis. He subsequently received a lumbar epidural steroid injection to treat his lower back and left lower extremity pain. 

In January 2010, the Veteran reported chronic low back and left leg pain, which the treatment provider indicated was consistent with lumbosacral radiculitis. The Veteran received a lumbosacral epidural steroid injection. 

In February 2010, the Veteran reported to the emergency room with severe lower back pain with pain radiating to both lower extremities after receiving an epidural steroid injection a few days earlier. He also complained of bowel and bladder incontinence. The treatment provider indicated that the Veteran did not have urinary or bowel incontinence and advised the Veteran to keep moving in order to prevent inactivity or stiffness. The treatment provider recommended good back support, avoidance of recliners, and continued activity for weight less.

A March 2010 VA treatment record indicates that the Veteran reported increased low back pain radiating to the hips, bilaterally, which increased with prolonged sitting or standing. It was noted that the Veteran was unable to sit for prolonged periods of time and used a walker at home and a wheelchair when he was out. A physical examination revealed that the Veteran's reflexes were, for the most part, nonexistent in both lower extremities. The diagnoses were severe degenerative disc disease at L5-S1; peripheral neuropathy, secondary to diabetes; and chronic left knee pain, status post joint replacement. 

An addendum to the March 2010 VA treatment record indicates that the Veteran called and reported exacerbation of lower back pain and possible bladder and bowel incontinence after receiving steroid injections. The treatment provider noted that the February 2010 emergency room physician did not think that the Veteran had bladder or bowel incontinence, but advised the Veteran to report to the emergency room if he experienced bowel or bladder incontinence. 

In July 2010, the Veteran reported increased pain and severe spasms in the back and legs after falling down a river bank. Imaging studies revealed fractures involving the right transverse processes at L1 through L4. The treatment provider noted that the Veteran was not a candidate for any interventions, and he was advised to continue using a walker. 

An August 2010 VA treatment record indicates that the Veteran's back pain prevented him from sitting longer than 30 minutes or walking any great distance. 

During an October 2013 VA examination, the Veteran reported severe back pain with bilateral radicular lower extremity pain and loss of function. He reported chronic daily flare-ups, which occurred secondary to activities of daily living. During flare-ups, he reported being unable to squat, kneel, reach, twist, push, pull, use hand or foot controls, walk greater than one or two feet, sit for more than one or two minutes, stand for longer than five minutes, or lift more than seven to ten pounds. The Veteran indicated that his pain was only partially relieved by ceasing aggravating activity, lying in a recliner with his knees elevated, using a TENS unit, nonsteroidal anti-inflammatory drugs, muscle relaxers, and narcotic pain medication. It was noted that lying flat on his back aggravated his pain. Range of motion testing revealed forward flexion to 60 degrees, extension to zero degrees, right lateral flexion to 20 degrees, left lateral flexion to five degrees, right lateral rotation to 20 degrees, and left lateral rotation to 20 degrees, with objective evidence of pain beginning at the limits of each range of motion. There was no additional limitation in range of motion after three repetitions. With repetitive use, the Veteran experienced less movement than normal, weakened movement, excess fatigability, incoordination, pain, swelling, instability, disturbance of locomotion, unfavorable ankylosis, and interference with sitting, standing and/or weightbearing. A physical examination revealed localized tenderness or pain to palpation at T6-T9 and L3-S1 and guarding or muscle spasm severe enough to result in abnormal spinal contour, such as scoliosis, reversed lordosis, or abnormal kyphosis. A sensory examination revealed severe lower extremity radicular pain, numbness, and paresthesias and/or dysthesias, bilaterally. There were no other neurologic abnormalities, such as bowel or bladder problems. The examiner noted that the Veteran experienced at least six weeks of incapacitating episodes over the past 12 months due to IVDS. It was also noted that the Veteran constantly used a wheelchair, cane, or walker due to his back disability. The diagnoses were degenerative disc disease and degenerative joint disease of the thoracic and lumbar spine, sciatica, IVDS, spondylolisthesis, right transverse process fractures involving L1 through L4, paresthesia, paralysis of the lower radicular nerve group, foraminal stenosis, and unfavorable lumbar spine ankylosis.

In a June 2014 addendum opinion, the October 2013 VA examiner clarified that the Veteran did not, in fact, have spinal ankylosis. 

As previously noted, prior to October 22, 2013, the Veteran's service-connected lumbosacral strain has been assigned a 20 percent disability rating pursuant to the criteria set forth in the General Rating Formula. Thus, in order for a higher disability rating to be assigned, the evidence of record must show that the limitation of motion caused by the Veteran's service-connected lumbosacral strain more nearly approximates forward flexion of the thoracolumbar spine to 30 degrees or less, or favorable ankylosis of the entire thoracolumbar spine. A review of the record reveals that prior to October 22, 2013, forward flexion was limited to 40 degrees, with objective evidence of pain throughout, and no evidence of spinal ankylosis. Beyond the measured limitation of motion, the Veteran reported increased pain, fatigue, weakness, and muscle spasms during weekly flare-ups, which lasted one or two days in duration. He indicated that his low back pain prevented him from playing sports; severely affected exercise and chores; moderately affected shopping, recreation, traveling, bathing, and dressing; mildly affected toileting; and did not affect feeding and grooming. Based on this additional pain, fatigue, weakness, and functional limitation during flare-ups, the Board finds that the Veteran's low back disability more nearly approximates the criteria for a 40 percent disability rating prior to October 22, 2013. See 38 C.F.R. §§ 4.40, 4.45, 4.59 (2015); see also Deluca v. Brown, 8 Vet. App. 202-206 (1995). 

The Board has also considered whether a higher disability rating is warranted based on incapacitating episodes prior to October 22, 2013. Although the September 2009 VA examiner indicated that the Veteran experienced approximately 60 days of incapacitating episodes during the past 12 months, the examiner did not indicate that the incapacitating episodes required treatment by a physician and prescribed bed rest, as required by the Formula for Rating Intervertebral Disc Syndrome (IVDS) Based on Incapacitating Episodes. See 38 C.F.R. § 4.71a. Notably, the examiner indicated that during said incapacitating episodes, the Veteran was unable to walk more than a few yards and had to use a wheelchair. The Board finds that a reasonable reading of the September 2009 VA examination report indicates that the Veteran was not on prescribed bed rest, as he attempted to walk and travel via wheelchair during the supposed incapacitating episodes. Moreover, a review of the Veteran's treatment records shows no evidence of prescribed bed rest. In fact, a February 2010 VA treatment record shows that when the Veteran reported severe back and lower extremity pain, he was specifically advised to keep moving in order to prevent inactivity or stiffness. In July 2010, when the Veteran reported increased back and lower extremity pain after falling down a river bank, he was advised to continue using his walker. Therefore, the Board finds that the evidence of record does not show that the Veteran was prescribed bed rest for any distinct period prior to October 22, 2013. Accordingly, a higher disability rating is not warranted based on incapacitating episodes. See 38 C.F.R. § 4.71a. 

Beginning October 22, 2013, the Veteran's service-connected lumbosacral strain has been assigned a 60 percent disability rating pursuant to the criteria set forth in the Formula for Rating IVDS Based on Incapacitating Episodes. See 38 C.F.R. § 4.71a, Diagnostic Code 5243. This is the maximum disability rating available based on incapacitating episodes. As the evidence of record does not show unfavorable ankylosis of the entire spine, the Board finds that a higher disability rating is not warranted under an alternative diagnostic code for any distinct period on or after October 22, 2013. See C.F.R. § 4.71a, General Rating Formula; see also Hart v. Mansfield, 21 Vet. App. 505, 509-10 (2007).

The Board has also consider whether the Veteran's service-connected lumbosacral strain resulted in a level of functional loss greater than that already contemplated by the 60 percent disability rating assigned from October 22, 2013. See 38 C.F.R. §§ 4.40, 4.45, 4.59 (2015); see also Deluca v, 8 Vet. App. at 202-206 (1995). As previously noted, the 60 percent disability rating was based on incapacitating episodes having a total duration of at least six weeks during the past 12 months. However, the record does not show that the incapacitating episodes reported by the Veteran involved prescribed bedrest and treatment by a physician, as required by the Formula for Rating IVDS Based on Incapacitating Episodes. Therefore, the Board finds that the Veteran's low back disability has not resulted in a level of functional loss greater than that already contemplated by the 60 percent disability rating. Accordingly, a higher disability rating is not warranted based on additional functional loss. See DeLuca v, 8 Vet. App. at 206 ; Mitchell v. Shinseki, 25 Vet. App. 32, 33 (2011). 

The Board has also considered whether a separate disability rating is warranted for associated bowel and bladder symptoms. A review of the record reveals that the Veteran reported symptoms of bladder incontinence. However, an August 2009 VA treatment provider indicated that although the Veteran reported urination "dribble," he did not endorse any true bladder or bowel dysfunction. A November 2009 VA treatment record indicates that the veteran has not developed any acute bowel or bladder dysfunction. In February 2010, the Veteran reported to the emergency room complaining of severe back pain with associated bladder and bowel incontinence; however, the emergency room physician indicated that the Veteran did not have urinary or bowel incontinence. An October 2013 VA examination report indicates that the Veteran did not have any neurologic abnormalities causing bladder or bowel problems. Thus, the medical evidence of record does not show objective neurologic bladder or bowel abnormalities related to the Veteran's service-connected low back disability. See 38 C.F.R. § 4.71a, Note (1). Accordingly, a separate rating is not warranted for bladder or bowel symptoms. 

II. Lower Extremity Radiculopathy

A separate disability rating has not been assigned for lower extremity radiculopathy, secondary to the Veteran's lumbosacral strain. However, the Veteran's service-connected diabetic peripheral neuropathy has been assigned a 10 percent disability rating for each lower extremity, effective February 24, 2009, and a maximum 100 percent disability rating for loss of use of both lower extremities, effective February 10, 2012. The Veteran has reported overlapping symptoms of lower extremity radiculopathy and diabetic neuropathy, including radiating pain, numbness, paresthesias and/or dysthesias. Moreover, the Veteran's diabetic neuropathy has been evaluated using the rating criteria for paralysis of the sciatic nerve. Therefore, assigning separate disability ratings to the Veteran's lower extremity radiculopathy and diabetic neuropathy would constitute impermissible pyramiding. See 38 C.F.R. § 4.14 (2015) (evaluating of the same disability under various diagnoses, which is known as "pyramiding," is to be avoided). Accordingly, the Board will only consider whether the Veteran's service-connected lower extremity neurological symptoms warrant a rating in excess of 10 percent prior to February 10, 2012. 

Pursuant to Diagnostic Code 8520, a 10 percent rating is assigned for mild incomplete paralysis of the sciatic nerve; a 20 percent rating is assigned for moderate incomplete paralysis of the sciatic nerve; a 40 percent rating is assigned for moderately severe incomplete paralysis; a 60 percent rating is assigned for severe incomplete paralysis, with marked muscular atrophy; and an 80 percent rating is assigned for complete paralysis of the sciatic nerve, where the foot dangles and drops, and there is no active movement possible of muscles below the knee, flexion of knee weakened, or very rarely, lost. 38 C.F.R. § 4.124a, Diagnostic Code 8520.

Words such as "mild," "moderate," and "severe" are not defined in the Rating Schedule. Rather than applying a mechanical formula, the Board must evaluate all of the evidence to the end that its decisions are "equitable and just." 38 C.F.R. 4.6 (2014). Furthermore, the term "incomplete paralysis," with this and other peripheral nerve injuries, indicates a degree of lost or impaired function substantially less than the type picture for complete paralysis given with each nerve, whether due to varied level of the nerve lesion or to partial regeneration. 38 C.F.R. § 4.124a , Note at Diseases of the Peripheral Nerves. When the involvement is wholly sensory, the rating should be for the mild, or at most, moderate. Id. The ratings for the peripheral nerves are for unilateral involvement; when bilateral, the ratings combine with application of the bilateral factor. Id.

A review of the record reveals right lower extremity radiculopathy that was wholly sensory prior to February 10, 2012. Thus, a rating in excess of 10 percent for right lower extremity radiculopathy prior to February 10, 2012, is not warranted. See 38 C.F.R. § 4.124a, Diagnostic Code 8520.

The record shows that the Veteran reported left lower extremity pain, numbness, tingling, and foot drop on numerous occasions prior to February 10, 2012, for which he received epidural steroid injections. The Veteran had objective evidence of nerve root involvement on the left side, including a positive sitting root test. An EMG/NCV study revealed left femoral mononeuropathy and moderate sensory mononeuropathy/peripheral neuropathy. Based on the foregoing, the Board finds that prior to February 10, 2012, the Veteran's left lower extremity neuropathy more nearly approximated moderate incomplete paralysis of the sciatic nerve. Thus, a 20 percent rating is warranted for left lower extremity neuropathy prior to February 10, 2012. See 38 C.F.R. § 4.124a, Diagnostic Code 8520.

III. Extraschedular Consideration

Generally, evaluating a disability using the corresponding or analogous diagnostic codes contained in the Rating Schedule is sufficient. See 38 C.F.R. §§ 4.20, 4.27 (2015). Because the ratings are averages, an assigned rating may not completely account for each individual veteran's circumstance, but nevertheless would still be adequate to address the average impairment in earning capacity caused by disability. In exceptional cases where the rating is inadequate, it may be appropriate to assign an extraschedular rating. 38 C.F.R. § 3.321(b) (2015).

The threshold factor for extraschedular consideration is a finding that the evidence before VA presents such an exceptional disability picture that the available schedular evaluation for that service-connected disability is inadequate, a task performed either by the RO or the Board. Id.; see Thun v. Peake, 22 Vet. App. 111, 115 (2008), aff'd, 572 F.3d 1366 (2009); see also Fisher v. Principi, 4 Vet. App. 57, 60 (1993) ("[R]ating [S]chedule will apply unless there are 'exceptional or unusual' factors which render application of the schedule impractical"). Therefore, initially, there must be a comparison between the level of severity and symptomatology of a veteran's service-connected disability with the established criteria found in the Rating Schedule for that disability. Thun, 22 Vet. App. at 115. If the criteria reasonably describe the veteran's disability level and symptomatology, then the disability picture is contemplated by the Rating Schedule, the assigned schedular evaluation is, therefore, adequate, and no referral is required.
The Board finds the Veteran's disability picture is not so unusual or exceptional in nature as to render the assigned schedular ratings inadequate. As determined above, the Veteran's lumbosacral strain and lower extremity radiculopathy have been manifested by pain; decreased motion; left lower extremity pain, tingling and numbness; and increased pain, fatigue, weakness, muscle spasms, and additional functional loss during flare-ups. When comparing this disability picture with the symptoms contemplated by the rating criteria, the Board finds that the Veteran's experiences are congruent with the disability picture represented by the assigned schedular ratings for each period on appeal. 

Additionally, the Veteran may be awarded an extraschedular rating based upon the combined effect of multiple conditions in an exceptional circumstance where the evaluation of the individual conditions fails to capture all the service-connected disabilities experienced. Johnson v. McDonald, 2013-7104, 2014 WL 3562218 (Fed. Cir. Aug. 6, 2014). However, in this case, there are no additional symptoms that have not been attributed to a specific service-connected disability. See Mittleider v. West, 11 Vet. App. 181 (1998). Accordingly, this is not an exceptional circumstance in which extraschedular consideration may be required to compensate the Veteran for a disability that can be attributed only to the combined effect of multiple conditions. 

In reaching this decision, the Board considered the doctrine of reasonable doubt; however, as the preponderance of the evidence is against assigning disability ratings in excess of those already assigned, the doctrine is not for application. See Gilbert v. Derwinski, 1 Vet. App. 49, 56 (1990). 

IV. Entitlement to TDIU

VA will grant TDIU when the evidence shows that a veteran is precluded by reason of a service-connected disability or disabilities from obtaining and maintaining substantially gainful employment consistent with his or her education and occupational experience. 38 C.F.R. §§ 3.340, 3.341, 4.16. The relevant issue is not whether the veteran is unemployed or has difficulty obtaining employment, but whether the veteran is capable of performing the physical and mental acts required by employment. Van Hoose v. Brown, 4 Vet. App. 361, 363 (1993). Advancing age, any impairment caused by conditions that are not service-connected, and prior unemployability status must be disregarded when determining whether a veteran is currently unemployable. 38 C.F.R. §§ 4.16(a), 4.19.

A total disability rating may be assigned when the schedular rating is less than total, where, if there is only one disability, the disability is rated at 60 percent or more, or where, if there are two or more disabilities, at least one disability is rated 40 percent or more and there is sufficient additional disability to bring the combined rating to 70 percent or more. 38 C.F.R. § 4.16(a). Where the percentage requirements for TDIU are not met, a total disability rating may nevertheless be assigned on an extraschedular basis when the veteran is unable to secure or follow a substantially gainful occupation as a result of his or her service-connected disability or disabilities. 38 C.F.R. § 4.16(b). The Board is precluded from assigning a TDIU rating on an extraschedular basis in the first instance. Instead, the Board must refer any claim that meets the criteria for referral for consideration of entitlement to a TDIU on an extraschedular basis to the Director of Compensation and Pension Service. See Bowling v. Principi, 15 Vet. App. 1, 10 (2001).

For the period on appeal prior to June 8, 2011, service connection was in effect for PTSD, rated as 50 percent disabling; lumbosacral strain, now rated as 40 percent disabling; diabetes mellitus, type II, rated as 10 percent disabling from February 24, 2009 to March 15, 2009 and 20 percent disabling beginning March 16, 2009; coronary artery disease, rated as 10 percent disabling, left lower extremity neuropathy, now rated as 20 percent disabling; and neuropathy of the remaining three extremities, each rated as 10 percent disabling. The combined schedular rating was 90 percent. Thus, the Veteran met the minimum schedular criteria for TDIU throughout the appeal period. See 38 C.F.R. § 4.16(a). As previously noted, beginning June 8, 2011, the Veteran's combined schedular rating was 100 percent, and he was in receipt of a special monthly compensation based on a single disability rated as 100 percent disabling and an additional disability rated as 60 percent disabling. See 38 C.F.R. § 3.350(i) (2015). Thus, the issue of entitlement to TDIU on or after June 8, 2011, is moot. See Bradley, 22 Vet. App. at 293.

The evidence of record indicates that the highest level of education attained by the Veteran is four years of college courses and an Associate's Degree in computer programing. The record shows that from August 1981 to May 2006, the Veteran worked full-time as a letter carrier for the U.S. Postal Service. From May 2006 to August 2008, the Veteran worked at a home improvement retail store.

During a July 2009 VA examination to assess the functional limitations caused by the Veteran's service-connected disabilities, the Veteran reported numbness and tingling in in all four extremities. He also reported constant back pain radiating down both lower extremities. He stated that he felt like he was walking on pins, needles, razor blades, or ice. The Veteran reported ambulating with a walker within his home, noting that he could not work more than 200 feet in one day. He reported using a motorized cart outside of his home. He also reported using "gripper" or other adaptive device to dress his lower extremities and put on shoes and socks. With regard to the occupational limitations caused by the Veteran's diabetic neuropathy, the examiner indicated that the Veteran had to avoid sedentary work requiring repetitive fine motor movements or coordination of the upper extremities. He also had to avoid lifting, carrying, handling of extremely hot or cold objects, and prolonged standing and walking. Based solely on his neuropathy, the examiner opined that the Veteran was capable of doing computer work for short periods of time, answering telephones, and performing other non-strenuous sedentary jobs. The examiner also noted that the Veteran wore a knee brace and had difficulty walking due to his nonservice-connected knee surgeries, including a total left knee replacement. The examiner indicated that many of the Veteran's physical limitations were due to non-service connected disabilities, including morbid obesity and multiple knee surgeries. However, the examiner did not address the functional limitations caused by the Veteran's service-connected low back disability and lower extremity radiculopathy. Accordingly, the Board assigns little probative value to the July 2009 VA examiner's opinion in this regard. 

VA treatment records dated February 2010 through August 2010 indicate that the Veteran reported lower back pain, which increased with prolonged sitting, standing, and walking. Consequently, the Veteran stated that he was unable to sit for longer than 30 minutes at a time or walk more than 200 feet in one day. The Veteran reported that the only position that relieved his lower back pain was lying in a recliner with his knees elevated.

VA psychiatric treatment records dated August 2010 and November 2010 demonstrate that the Veteran reported looking for work, but stated that he was unable to find a job due to his physical limitations. Specifically, he stated that employers were not even willing to offer him a position answering telephones because his lower back pain prevented him from sitting for more than 20 minutes at a time. 

Based on the foregoing, the Board finds that the evidence of record demonstrates that the Veteran's service-connected disabilities precluded him securing or following a gainful occupation prior to June 8, 2011. Accordingly, TDIU is warranted prior to June 8, 2011. 




















ORDER

A rating of 40 percent, but no more, for a lumbosacral strain is granted prior to October 22, 2013, subject to the law and regulations governing the payment of monetary benefits.

A rating in excess of 60 percent for a lumbosacral strain on or after October 22, 2013, is denied.

A rating in excess of 10 percent for right lower extremity neuropathy prior to February 10, 2012, is denied.

A rating of 20 percent, but no more, for left lower extremity neuropathy is granted prior to February 10, 2012, subject to the law and regulations governing the payment of monetary benefits.

TDIU is granted prior to June 8, 2011, subject to the law and regulations governing the payment of monetary benefits.



____________________________________________
ROBERT C. SCHARNBERGER
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs